UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| ANTHONY KEENAN SHARP, | 4:22-CV-04013-LLP |
| Plaintiff, | |
| vs. | 1915A SCREENING ORDER FOR DISMISSAL |
| SOUTH DAKOTA DEPARTMENT OF CORRECTIONS; REBECCA SCHIEFFER, Assistant Deputy Warden, in her individual capacity; CYNTHIA SKELTON-BROWN, Correctional Unit Coordinator, in her individual capacity; CHRIS HAPPE, Sgt., in his or her individual capacity, | |
| Defendants. | |

Plaintiff, Anthony Keenan Sharp, an inmate at the Yankton Community Work Center,[1] filed a pro se civil rights lawsuit under 42 U.S.C. § 1983. Doc. 1. Sharp paid his full filing fee on April 11, 2022. This Court now screens Sharp's complaint under 28 U.S.C. § 1915A.

**FACTUAL BACKGROUND**

Sharp claims that Work Center officials violated his rights on several occasions and engaged in a "campaign of harassment" against him. Doc. 1 at 4, 6. He claims that he was placed on the ride out shuttle on May 5, 2021, while his unit was being shook down by Corporal Baylor. Doc. 1-1 at 59. Sharp alleges that Baylor told him to remove his sweatpants and sweatshirt so that they could be placed with his property, and he told Baylor that his locker was the one with a

---

[1] Sharp is no longer an inmate at the Yankton Community Work Center. *See* South Dakota Department of Corrections, https://doc.sd.gov/adult/lookup (last visited May 18, 2022). Because Sharp was an inmate at the time he filed this lawsuit, this Court treats his complaint as a prisoner lawsuit.

1

lock on it. *Id.* He alleges that when he returned a week later, all of his commissary purchases were missing from his property box. *Id.* Sharp states that his sweatpants and sweatshirt were in the box, but his remaining commissary items were missing. *Id.* at 59-60. He states that he notified several Work Center officials, including Correctional Unit Coordinator Cynthia Skelton-Brown[2] and Associate Warden Rebecca Schieffer. *Id.* at 60. Sharp claims that Work Center officers opened his locked locker and left it open, allowing inmates to steal his belongings. *Id.*

Sharp alleges that he attempted to resolve this issue through the grievance process, but at each level, his grievances and appeals were rejected because Work Center officials stated that his locker was open and that the items were missing when they first packed his belongings. *Id.* at 57-58, 72-73, 100, 102. He alleges that he also sent letters explaining the issue to Cliff Fantroy, the South Dakota State Penitentiary Chief Security Officer, and Mike Leidholt, the Secretary of Corrections at that time, and he received a response from Leidholt stating that Leidholt would not intervene until Sharp had fully exhausted the grievance process. *Id.* at 74, 100, 120. He also alleges that he is owed $101.46 for his missing items and an additional amount for the postage to mail his appeal and for the cost to mail letters to Fantroy and Leidholt. *Id.* at 73, 100.

Sharp states that he got written up for possession of unauthorized tobacco products on November 4, 2021, because Sergeant Chris Happe found rolling tobacco, rolling papers, and steel wool were allegedly found in a dresser that Sharp used, even though the dresser was used by other inmates. *Id.* at 1, 7. He states that he was disciplined in retaliation for filing a small claims action against Schieffer. *Id.* at 1-2, 10-11. Sharp claims that he was charged $40.00 for this alleged violation and is owed another $0.80 for copies of a DOC policy and a South Dakota

---

[2] Sharp refers to "Correctional Unit Coordinator Ms. Brown" in the attachment to his complaint in which he describes this incident. Doc. 1-1 at 60. He appears to be referring to Cynthia Brown-Skelton, a defendant in this case. *See id.*

statute that he printed. *Id.* at 2. He claims that he requested the DOC's search policy and was told by Unit Director Hagemann that the policy was non-public and could not be printed. *Id.* He also claims that he was not served the report until five days after the incident, violating a DOC policy requiring a disciplinary report to be served within 72 hours. *See id.* at 1. Sharp alleges that he had difficulty following the grievance process regarding this disciplinary report because his original grievances, which he had to include in his appeals, were never returned to him. *See id.* at 5-6. He alleges that Skelton-Brown "illegally answered" his initial grievance because she was the one to issue the initial report. *Id.* at 10. He also alleges that she violated his human rights and due process rights in answering his grievance. *Id.* Sharp attached to his complaint a December 23, 2021, memorandum from Interim Secretary of Corrections Doug Clark indicating that Sharp's disciplinary record for this incident was expunged and his fine was refunded. *Id.* at 165.

Sharp claims that he attempted to mail a package on November 6, 2021, and he received a message on December 5, 2021, informing him that the package never reached its destination. *Id.* at 155. He claims that he then learned that no money had been taken out of his account to mail the package. *Id.* Sharp alleges that his package was not mailed because of Schieffer's retaliatory "campaign of harassment" against him. *Id.* Sharp attached to his complaint a response to the grievance he filed over this issue indicating that the package had been located and shipped on or around December 14, 2021. *Id.* at 190.

Sharp alleges that he returned shoes he got from the commissary because they were the wrong size at the end of October 2021, seeking to exchange them for the correct size. *Id.* at 156. He alleges that he filed a grievance on December 13, 2021, because he had not yet received the correct shoes or alternatively, a refund. *Id.* He also alleges that this was part of Schieffer's

3

retaliation against him. *Id.* Sharp attached to his complaint a response to the grievance dated two days later indicating that he had been refunded for the shoes. *Id.* at 179.

Sharp states that Work Center officials were deliberately indifferent to his serious medical needs. *See id.* at 154. He attached to his complaint a medical record from a healthcare provider visit on August 16, 2021, where he complained of itchiness on his torso and arms and told the provider that he believed he was receiving the wrong laundry. *Id.* at 159. According to the attached record, the provider noted no skin irritation and called laundry staff to confirm that Sharp's clothing was washed in non-allergenic soap. *Id.* at 160. Sharp received a change of clothing and bedding and was told to return to the clinic if his symptoms worsened. *Id.*

Sharp attached a medical record from a second Work Center healthcare provider visit on December 13, 2021, in which he complained that the DOC stopped using his medically ordered non-allergenic soap, causing skin irritation. *Id.* at 168. The provider noted "white dry flaking skin" on Sharp's lower back and a "slightly darker" spot on his right lower thigh. *Id.* at 169. According to the attached record, the provider confirmed with the DOC that hypoallergenic soap was being used. *Id.* at 170. Sharp also complained of back pain at this visit, and he requested the status of a prior provider referral for physical therapy. *Id.* In response, the provider told Sharp that that the referral was still active and had not yet been approved or denied by the medical director. *Id.* According to another attached medical record, Sharp visited a Work Center healthcare provider a third time on December 16, 2021, complaining of worsening skin symptoms for which hydrocortisone provided no relief. *Id.* at 174-75. At this visit, Sharp insisted on baby oil, even though the provider suggested a different treatment, and the provider ordered baby oil. *Id.* at 175. Sharp also alleges that medical co-pays of $50 and $40 were taken out of his

4

account for provider visits even though deductions were taken out of his funds for health insurance. Doc. 1-1 at 164.

According to a disciplinary report submitted by Sharp, he was written up upon returning from a medical appointment on February 4, 2022. Doc. 9-1 at 19. Sharp was strip searched upon his return and "began to get upset due to him having to perform the procedure correctly." *Id.* John Ahrens and Brandon Peitz, Work Center officers, found that Sharp had an altered pair of shorts, a pen hidden in in his shoe, and shower shoes inside his shoes. *Id.* The officers confiscated and disposed of these items. *Id.* Sharp alleges that Ahrens required him to open his mouth and move his tongue four or five times while he was nude and that Ahrens then required him to stick his hand in his mouth. *Id.* at 20. Sharp alleges that he refused to do so because his hand was dirty, and Ahrens said in response, "so you going to be like that" and "you are going to get it, you're [sic] see[.]" *Id.* Sharp claims that Ahrens then started staring at him in an attempt to intimidate, harass, and retaliate against him, and Sharp then told Ahrens that he would file a grievance against him and that the courts would hear about this treatment. *Id.*

Sharp claims that Ahrens then ordered him to turn around and lift his feet up to inspect the bottom of his feet and that when he did so, Ahrens kicked at him and said "you're [sic] see what will happen." *Id.* at 20-21. He also claims that he needed the shower shoes because his state issued shoes were too big and did not fit correctly. *Id.* at 21. Sharp alleges that this incident is part of the "campaign of harassment" he faced at the Work Center. *Id.* He alleges that Ahrens "was creating a hostile work and living environment by his actions" and accuses him of harassment, discrimination, inappropriate behavior, and violating DOC policy. *See id.* at 21-22. He also alleges that this incident was retaliation for filing this civil rights lawsuit. *Id.* at 21.

Sharp claims that he was held in custody past his initial parole date as part of the retaliation against him. *Id.* at 33-35. He claims that his initial parole date should have been moved from March 10, 2022, to January 4, 2022, because he only needed to serve 70% of his sentence after earning discharge work credits through December 2021. *See id.* at 33-34. He also claims that he contacted his unit case manager at the time, Bruce Fisher, about this issue on or about December 15, 2021, and that Fisher told him he would receive credit for his December 2021 work hours in January 2022. *Id.* at 33. Sharp alleges that he informed his current unit case manager, Whitney Rice, of this on or about January 2, 2022, and Rice told him that his December credits would not apply until they were posted on January 19, 2022. *Id.* at 34. He alleges that the credits were not posted on January 19, but according to a family member, January 4 was still listed as his initial parole date on the inmate locator website. *Id.* He also alleges that Cory Nelson with Behavioral Health verified that his initial parole date was January 4, 2022. *Id.* at 34-35.

Sharp alleges that the Work Center has interfered with his ability to bring these claims. *See* Doc. 1-1 at 162, 193; Doc. 3 at 1. Specifically, he alleges that he wrote to his unit manager three times to receive a printed motion to proceed in forma pauperis form. *Id.* at 162. He also alleges that he ultimately had to write to the clerk of court to receive this application and that his unit manager was retaliating against him. *Id.* Sharp claims that the accounting office at the Work Center did not include the required number of months on his initial Prisoner Trust Account Report. Doc. 3 at 1. He claims that a Work Center officer refused to provide him a phone number he needed for a legal matter unless he said "please" when he asked her for the number. Doc. 1-1 at 193. He also claims that this was part of the harassment and retaliation he faced at the Work Center. *Id.*

6

Sharp brings claims for violation of his Fourteenth Amendment due process rights, violation of his First Amendment right to be free from retaliation, and violation of his Eighth Amendment right to be free from cruel and unusual punishment. *See* Doc. 1 at 6. He sues Schieffer, Happe, and Skelton-Brown in their individual capacities, but he does not specify which claims he brings against each defendant. *See id.* at 2-3, 6. He also sues the South Dakota Department of Corrections. *Id.* at 2. He alleges that the defendants have caused him money damages and intentionally inflicted emotional distress, causing him to see Cory Nelson with Behavioral Health and to seek a referral for a mental health professional offsite. *See id.* at 5. He seeks several forms of injunctive relief, money damages, and additional relief this Court deems proper. *Id.*; Doc. 9-1 at 35-36.

## LEGAL BACKGROUND

The court must assume as true all facts well pleaded in the complaint. *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 36 (8th Cir. 1995). Pro se and civil rights complaints must be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 839 (8th Cir. 2004). Even with this construction, "a pro se complaint must contain specific facts supporting its conclusions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) (citation omitted); *see also Ellis v. City of Minneapolis*, 518 F. App'x 502, 504 (8th Cir. 2013).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). If it does not contain these bare essentials, dismissal is appropriate. *Beavers v. Lockhart*, 755 F.2d 657, 663 (8th Cir. 1985). *Twombly* requires that a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in

7

the complaint are true[.]" *Twombly*, 550 U.S. at 555 (internal citation omitted); *see also Abdullah v. Minnesota*, 261 F. App'x 926, 927 (8th Cir. 2008) (noting that a "complaint must contain either direct or inferential allegations respecting all material elements necessary to sustain recovery under some viable legal theory"). Under 28 U.S.C. § 1915A, the court must screen prisoner complaints and dismiss them if they "(1) [are] frivolous, malicious, or fail[] to state a claim upon which relief may be granted; or (2) seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). The court will now assess each individual claim under 28 U.S.C. § 1915A.

## DISCUSSION

### I.  Claims Against the South Dakota Department of Corrections

Sharp brings claims against the South Dakota Department of Corrections. Doc. 1 at 2. Eleventh Amendment bars suit against a state entity, as opposed to a state official, regardless of whether money damages or injunctive relief is sought. *Cory v. White*, 457 U.S. 85, 90-91 (1982). In determining whether an entity is entitled to Eleventh Amendment immunity, the court examines powers created by state law, the degree of autonomy and control, and whether it is funded by the state treasury. *Greenwood v. Ross*, 778 F.2d 448, 453 (8th Cir. 1985) (citation omitted). According to South Dakota statute, the Department of Corrections was created by the state legislature. *See* SDCL § 1-15-1.2. The Department of Corrections is an arm of the state of South Dakota and, as such, is not subject to suit under § 1983. Sharp's claims against the South Dakota Department of Corrections are dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### II.  Injunctive Relief Claims

8

Sharp seeks several forms of injunctive relief. *See* Doc. 1 at 5; Doc. 9-1 at 35-36. Sharp asks this Court for an injunction and a temporary restraining order in his initial complaint, although he does not indicate the specific relief he seeks. *See* Doc. 1 at 5. In a supplement to his complaint, he asks for updated sentence key dates to be posted at the Work Center and for his disciplinary record to be expunged for any entries after his initial parole date. Doc. 9-1 at 35-36. Sharp is no longer in custody. *See* Doc. 10 (informing the Court of his updated address). Thus, the injunctive relief he seeks regarding his incarceration is moot, and his claims for injunctive relief are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### III. Claims Against John Ahrens

Sharp brings claims against John Ahrens, accusing Ahrens of harassment, discrimination, "creating a hostile work and living environment by his actions[,]" and violating DOC policy and Work Center rules. Doc. 9-1 at 21-22. Sharp does not state the capacity in which he sues Ahrens. *See id.* If a plaintiff does not specify the capacity in which he sues a defendant, the suit is treated as only including official capacity complaints. *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995); *Nix v. Norman*, 879 F.2d 429, 431 (8th Cir. 1989). Thus, he sues Ahrens in his official capacity only.

Ahrens is an employee of the State of South Dakota. *See* Doc. 9-1 at 19. As the United States Supreme Court has stated, "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citing *Brandon v. Holt*, 469 U.S. 464, 471 (1985)). Thus, it is a suit against the state itself. While "[§] 1983 provides a federal forum to remedy many deprivations of civil liberties . . . it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." *Id.* at 66.

9

The Eleventh Amendment generally acts as a bar to suits against a state for money damages unless the state has waived its sovereign immunity. *Id.* (citation omitted). Here, because this Court dismissed Sharp's claims for injunctive relief as moot above, Sharp's remaining claims are for money damages. *See* Doc. 1 at 5; Doc. 9-1 at 35-36. Claims for money damages against Ahrens in his official capacity are the equivalent of claims for money damages against the State of South Dakota. The State of South Dakota has not waived its sovereign immunity to allow Sharp's official capacity claims for money damages. Thus, Ahrens is protected against official capacity claims for money damages, and Sharp's official capacity claims for money damages against Ahrens are dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2).

## IV. Individual Capacity Claims

"Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

> Thus, each Government official . . . is only liable for his or her own misconduct. As we have held, a supervising officer can be liable for an inferior officer's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation.

*Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010) (cleaned up). Sharp's individual capacity claims must allege that each individual defendant either participated in the unconstitutional conduct or caused the conduct to occur through a failure to train or supervise the offending actor.

### A. Fourteenth Amendment Due Process Claims

Sharp alleges that his due process rights under the Fourteenth Amendment have been violated in several ways. Specifically, Sharp alleges that Schieffer, Skelton-Brown, and Happe

10

have violated his due process rights by mishandling the grievance process, extending his incarceration past his initial parole date, and depriving him of his property. *See* Doc. 1 at 6; Doc. 1-1 at 5-6, 10, 41-43, 50, 59-60, 193; Doc. 9-1 at 33-35.

### 1. Grievance Process Claims

Sharp brings claims against Schieffer, Skelton-Brown, and Happe for mishandling the grievance process. *See* Doc. 1-1 at 5-6, 10. "While a violation of a state-created liberty interest can amount to a violation of the Constitution, not every violation of state law or state-mandated procedures is a violation of the Constitution." *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (per curiam) (holding that a refusal to process grievances alone did not state a constitutional deprivation.). In *Buckley*, the Eighth Circuit explained that a prison grievance procedure "is a procedural right only, it does not confer any substantive right upon the inmates. Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the [F]ourteenth [A]mendment." *Id.* (quotation omitted); *see also King v. Houston*, 556 F. App'x 561, 563 (8th Cir. 2014) (per curiam) (citing *Buckley* for the proposition that "prison officials' failure to process or investigate grievances, without more, is not actionable under § 1983"). Here, Sharp alleges that the way his grievances were processed and handled violates his rights, but this alone does not arise to the level of a constitutional violation. Thus, Sharp's grievance process claims against Schieffer, Skelton-Brown, and Happe in their individual capacities are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(l).

### 2. Property Claims

Sharp brings claims against Schieffer, Skelton-Brown, and Happe for depriving him of his property in violation of his Fourteenth Amendment due process rights. *See* Doc. 1 at 59-60,

11

193. Sharp alleges that Work Center officers left his locker unlocked, allowing other inmates to steal his belongings. *Id.* at 59-60. He alleges that Work Center officers failed to follow DOC policy in handling his possessions and refusing to reimburse him for their loss. *See id.* at 41-43, 50. He also alleges that medical co-pays were taken out of his account that should have been covered by insurance. *Id.* at 193. Under the Fourteenth Amendment, a "State [cannot] deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV, § 1. But even an intentional deprivation of property does not state a due process claim under the Fourteenth Amendment if there is an adequate post-deprivation remedy. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). SDCL § 21-3-3 recognizes a cause of action for wrongful conversion of personal property. Thus, Sharp fails to state a due process claim for the loss of his locker possessions and medical co-pays.

Sharp also fails to state a due process claim for failure to follow DOC policy. Under *Buckley*, not every violation of a prison regulation is a violation of the Constitution. *See Buckley*, 997 F.2d at 495. A plaintiff can bring a due process claim for violation of a prison regulation if the regulation in question has created a constitutionally protected interest. *Williams v. Armontrout*, 852 F.2d 377, 379 (8th Cir. 1988). A regulation creates a protected interest when it "contain[s] particularized substantive standards or criteria that significantly guide[s] the decisionmakers" and "use[s] mandatory language requiring the decisionmakers to act in a certain way." *Nash v. Black*, 781 F.2d 665, 668 (8th Cir. 1986) (citing *Parker v. Corrothers*, 750 F.2d 653, 656-62 (8th Cir. 1984). Further, the defendants also must have intended to deprive the plaintiff of his or her protected interest, as "[t]he Due Process Clause of the Fourteenth Amendment is not implicated by the lack of due care of an official causing unintended injury to

life, liberty, or property." *Glick v. Walker*, 834 F.2d 709, 711 (8th Cir. 1987) (quoting *Davidson v. Cannon*, 474 U.S. 344, 347 (1986).

Here, Sharp alleges that the defendants failed to follow DOC policy in their handling of his property. *See* Doc. 1-1 at 41-43, 50. But Sharp makes no allegation that any defendants' actions were intentional rather than "the lack of due care" contemplated by *Glick*. Because Sharp does not allege any intention on the part of the defendants to deprive him of his property, this Court need not address whether the DOC policies in question create a constitutionally protected interest. Thus, Sharp's due process property claims against Schieffer, Skelton-Brown, and Happe in their individual capacities are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(l).

### 3. Parole Date Claims

Sharp brings claims against Schieffer, Skelton-Brown, and Happe for extending his incarceration past his initial parole date in violation of his Fourteenth Amendment due process rights. Doc. 9-1 at 33-35. The Eighth Circuit Court of Appeals has explained that "a state may create a liberty interest in parole by enacting a statute which instills in an inmate an 'expectancy of release.' " *Dace v. Mickelson*, 816 F.2d 1277, 1279 (8th Cir. 1987) (quoting *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 12 (1979)). In order to create such an expectancy, the statute must list criteria for release and then "*require* release upon satisfaction of the substantive criteria listed." *Id.* at 1280.

SDCL § 24-15A-38 governs grants of parole for inmates who committed crimes after July 1, 1996.[3] *See* SDCL § 24-15A-3. This statute does not afford discretion to the Parole Board:

---

[3] Sharp does not indicate whether he is imprisoned for a crime committed before or after July 1, 1996. *See* Doc. 5. The South Dakota Department of Corrections Offender Locator lists Sharp as being sentenced on July 13, 2016, although this is the date of sentencing, not the date that the

Each inmate *shall* be released from incarceration to parole supervision, without a hearing with the board, at the time of the inmate's initial parole date, if the inmate has substantively met the requirements of the individual program directive established by the department, agreed to the conditions of supervision and has an approved parole release plan.

§ 24-15A-38 (emphasis added). Thus, Sharp has a liberty interest in his parole proceedings protected by the Fourteenth Amendment. Under *Parrish*, Sharp must also allege that each individual defendant participated in the unconstitutional conduct. 94 F.3d at 1001. Here, Sharp makes no such allegations. *See* Doc. 9-1 at 33-35. Sharp alleges that he was unconstitutionally imprisoned past his initial parole date, but he makes no claims regarding the involvement of Schieffer, Skelton-Brown, or Happe. *See id.* Thus, his parole claims against Schieffer, Skelton-Brown, and Happe in their individual capacities are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(l).

### B. Eighth Amendment Claims

Sharp alleges that Schieffer, Skelton-Brown, and Happe violated his Eighth Amendment rights. *See* Doc. 1 at 3. Construing his complaint liberally, he brings claims for deliberate indifference to his serious medical needs in violation of his Eighth Amendment right to be free from cruel and unusual punishment. *See id.*; Doc. 1-1 at 154, 159-61, 168-76. "[D]eliberate indifference to serious medical needs of prisoners constitutes 'the unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison

---

crimes for which Sharp was sentenced were committed. South Dakota Department of Corrections, https://doc.sd.gov/adult/lookup/ (last visited May 18, 2022). Thus, because this court cannot say with certainty that Sharp is imprisoned for a crime committed before July 1, 1996, this court will assume for screening purposes that § 24-15A-38 governs his parole.

guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* at 104-05 (footnotes omitted). "This conclusion does not mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. "[A] prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106. Allegations of negligence will not suffice, nor will mere disagreement with treatment decisions. *See Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (citation omitted).

The deliberate indifference standard includes both an objective and subjective component. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) (citing *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997)). The plaintiff "must demonstrate (1) that [he] suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." *Id.* (citing *Coleman*, 114 F.3d at 784). "A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Coleman*, 114 F.3d at 784 (internal quotation omitted). To be liable for deliberately disregarding medical needs, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Spruce v. Sargent*, 149 F.3d 783, 786 (8th Cir. 1998) ("[C]onstructive knowledge, or the 'should-have-known' standard, is not sufficient to support a finding of deliberate indifference . . . .").

Sharp fails to state a claim for deliberate indifference to serious medical needs. He does not state the basis for this claim but merely attaches medical records to his complaint. *See* Doc. 1-1 at 159-61, 168-76. These records indicate that he sought and received medical treatment for a

15

skin condition. *See id.* Although he told the medical provider that he believed he was being given the wrong clothing and that the Work Center stopped using his medically ordered soap, his medical records indicate that the medical provider addressed these concerns with the Work Center. *See id.* at 159-60, 168, 171, 174-75. Thus, his medical needs regarding his skin condition were not disregarded. He also complained to the medical provider that his referral for physical therapy to treat his back pain had not been approved or denied by the DOC. *Id.* at 170. Although Sharp alleges that his back pain was ignored by DOC officials, he makes no allegations that Schieffer, Skelton-Brown, or Happe were the officials that ignored this condition. Under *Farmer* and *Spruce*, deliberate indifference to serious medical needs claims require that the defendants in question actually knew of and were indifferent to the medical needs in question. *Farmer*, 511 U.S. at 837; *Spruce*, 149 F.3d at 786. Thus, Sharp's Eighth Amendment claims for deliberate indifference to serious medical needs against Schieffer, Skelton-Brown, and Happe in their individual capacities are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(l).

### C. First Amendment Claims

#### 1. Retaliation Claims

Sharp brings claims for retaliation against Schieffer, Skelton-Brown, and Happe in their individual capacities. *See* Doc. 1 at 6. Construing his complaint liberally, Sharp claims that Schieffer, Skelton-Brown, and Happe retaliated against him in violation of his First Amendment rights for exercising his right to access the courts. *See id.*; Doc. 1-1 at 1-2, 10-11, 155-56, 162, 193; Doc. 91 at 18-22, 33-35. In order for a plaintiff to allege a First Amendment retaliation claim, he must show that "(1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the

activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." *Spencer v. Jackson County*, 738 F.3d 907, 911 (8th Cir. 2013) (quoting *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004)).

Sharp alleges that Schieffer, Skelton-Brown, and Happe retaliated against him for filing a small claims action against Schieffer and for filing this civil rights lawsuit by falsely disciplining him for possessing tobacco products, failing to mail his package, failing to exchange his shoes or provide a refund, failing to provide him with documents and a phone number he needed for pursuing legal matters, unnecessarily disciplining him upon returning from a medical appointment, and incarcerating him past his initial parole date. *See* Doc. 1-1 at 1-2, 10-11, 155-56, 162, 193; Doc. 91 at 18-22, 33-35. Thus, taking Sharp's allegations as true, Sharp clearly satisfies the first prong of a First Amendment retaliation claim because "the filing of an inmate lawsuit . . . is protected First Amendment activity." *Lewis v. Jacks*, 486 F.3d 1025, 1029 (8th Cir. 2007) (citing *Dixon v. Brown*, 38 F.3d 379, 379 (8th Cir. 1994)).

For Sharp to satisfy the second prong of a First Amendment retaliation claim, he must demonstrate both that Schieffer, Skelton-Brown, and Happe took an adverse action toward him and that the alleged adverse action "would chill a person of ordinary firmness from continuing in the activity[.]" *Spencer*, 738 F.3d at 911 (quoting *Revels*, 382 F.3d at 876); *see also Jacks*, 486 F.3d at 1029 (holding in a First Amendment retaliation claim that the record contained insufficient evidence that increasing the prisoner's work load would chill a prisoner of ordinary firmness from using the prison grievance process). "The ordinary-firmness test is well established in the case law, and is designed to weed out trivial matters from those deserving the time of the courts as real and substantial violations of the First Amendment." *Santiago v. Blair*, 707 F.3d 984, 992 (8th Cir. 2013) (quoting *Garcia v. City of Trenton*, 348 F.3d 726, 728 (8th Cir.

17

2003)). This is an objective test that looks at whether a reasonable prisoner's actions would be chilled by an official's alleged adverse actions. *See id.* (citing *Garcia*, 348 F.3d at 729).

Here, Sharp fails to allege facts sufficient to show that Schieffer, Skelton-Brown, and Happe took adverse actions towards him that would chill a reasonable prisoner of ordinary firmness from asserting an inmate lawsuit. He alleges that prison officials disciplined him for possessing tobacco products that were not his, failed to mail his package, and failed to exchange or refund his shoe purchase. Doc. 1-1 at 1-2, 155-56. But these issues were rectified by the Work Center after Sharp filed grievances, and as a result, Sharp merely alleges that he faced difficulties that he had to ask the Work Center to correct. *See id.* at 165, 179, 190. He also alleges that he was required to say please before receiving a phone number and that he had to ask the Court directly for a form that Work Center officers would not provide him. *Id.* at 162, 193. Sharp does not allege that he did not receive the phone number, and he was ultimately able to receive the form he requested from the Court. *See id.* These incidents do not rise to the level of a constitutional violation.

Sharp also alleges that Ahrens targeted him for unnecessary discipline and that he was incarcerated beyond his initial parole date. Doc. 9-1 at 18-22, 33-35. These actions, especially the extended incarceration, could chill a reasonable prisoner of ordinary firmness from asserting an inmate lawsuit. But Sharp fails to allege that Schieffer, Skelton-Brown, or Happe participated in these actions. *See id.* Sharp's account of the encounter with Ahrens makes no mention of Schieffer, Skelton-Brown, or Happe. *See id.* at 18-22. As discussed above, Sharp makes no claims regarding the involvement of Schieffer, Skelton-Brown, or Happe in his incarceration beyond his initial parole date. *See id.* at 33-35. Thus, Sharp fails to allege that Schieffer, Skelton-Brown, and Happe took adverse actions that would chill a reasonable prisoner of ordinary

18

firmness from asserting an inmate lawsuit. Sharp's First Amendment retaliation claims against Schieffer, Skelton-Brown, and Happe in their individual capacities are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(l).

### 2.  Access to the Courts Claims

Construing his complaint liberally, Sharp brings claims against Schieffer, Skelton-Brown, and Happe in their individual capacities for violating his First Amendment right to access the courts. "The Constitution guarantees prisoners a right to access the courts." *White v. Kautzky*, 494 F.3d 677, 679 (8th Cir. 2007). To succeed on a claim for denial of access to the courts, a plaintiff must show that he suffered actual injury as a result of the defendants' actions. *Lewis v. Casey*, 518 U.S. 343, 351 (1996). In order to satisfy the actual injury requirement, a plaintiff must "demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded." *Johnson v. Missouri*, 142 F.3d 1087, 1089 (8th Cir. 1998) (quoting *Casey*, 518 U.S. at 353). "The right of access to the courts is satisfied if the prisoner has 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.' " *Zink v. Lombardi*, 783 F.3d 1089, 1108 (8th Cir. 2015) (quoting *Casey*, 518 U.S. at 356).

Here, Sharp fails to state a claim for denial of his right to access the courts because he fails to satisfy the actual injury requirement. Sharp alleges that he requested a printed copy of a motion to proceed in forma pauperis application from the Work Center three times and that he had to write to the Court directly for this application. Doc. 1-1 at 162. He alleges that the Work Center accounting office failed to include the required number of months in his Prisoner Trust Account Report. Doc. 3 at 1. He also alleges that a Work Center officer would not provide him a phone number he needed for a legal matter until he said "please." Doc. 1-1 at 193. But Sharp does not allege that a claim has been frustrated or impeded. He ultimately was able to file a

motion to proceed in forma pauperis with this Court, along with a completed Prisoner Trust Account Report. *See* Docs. 2, 7. He does not allege that he did not receive the phone number he requested, only that he did not appreciate how the officer treated him. *See* Doc. 1-1 at 193. Thus, Sharp's First Amendment access to the courts claims against Schieffer, Skelton-Brown, and Happe in their individual capacities are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(l).

## V.  Strike Under 28 U.S.C. 1915(g)

The Court finds that Sharp's complaint fails to state a claim upon which relief may be granted. Section 1915(g) states as follows:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). Because Sharp's complaint is dismissed for failure to state a claim upon which relief may be granted, this dismissal will count as a strike.

Accordingly, it is ORDERED:

1.  That Sharp's claims against the South Dakota Department of Corrections are dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

2.  That Sharp's claims against Ahrens in his official capacity are dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2).

3.  That Sharp's remaining claims against Schieffer, Skelton-Brown, and Happe in their individual capacities are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

4.   That this action constitutes a strike against Sharp for purposes of the three-strikes rule under 28 U.S.C. § 1915(g).

5.   That judgment is entered in favor of the South Dakota Department of Corrections, Rebecca Schieffer, Cynthia Skelton-Brown, and Chris Happe and against Sharp.

DATED May 24th, 2022.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
MATTHEW W. THELEN, CLERK